IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRENDAN HESTER, | CASE NO. 1:18-CV-01159 |
| Plaintiff, | JUDGE JAMES S. GWIN |
| -vs- | |
| CITY OF ASHTABULA, OHIO, et al., | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ORDER AUTHORIZING EXAMINATION AND TESTING OF EVIDENCE** |
| Defendants. | |

Plaintiff Brendan Hester, through counsel, opposes Defendants' motion seeking this Court's order authorizing examination and testing of evidence collected from his home after Defendant Gillespie shot and paralyzed him. Defendants seek to conduct DNA testing on the firearm allegedly belonging to Justin Good, the intruder in Plaintiff's home, and unspecified and unlimited forensic testing on five cellular phones confiscated from Plaintiff's home. The testing Defendants seek falls outside the bounds of permissible discovery in this civil case, and is nothing more than a fishing expedition that is not proportional to the needs of this case. Furthermore, the testing Defendants seek to conduct will invade the reasonable expectation of privacy of non-parties in their cellular phones without probable cause to do so. This Honorable Court should deny Defendants' motion in its entirety.

<u>Firearm Testing</u>

Forensic testing of the firearm allegedly handled by Justin Good inside Plaintiff's home is highly unlikely to result in any admissible and relevant evidence and should not be permitted.

Multiple people in the house, including, for example, Chuck Morgan, and Morgan's girlfriend, Destinee Medina, all testified under oath that they observed the gun in Justin Good's

hand and that they all handled it at some point that night after they got it away from Good. Medina awoke to see a man she did not know – now known to be Justin Good – at the doorway to the bedroom she shared with Morgan and her toddler daughter. The unknown man carried a gun. She awoke Morgan, who fought with the intruder and disarmed him. Medina called 911 for help, explaining that there was a man with a gun insider her home. Chuck got the gun away from Good. The gun was passed off to Medina. Medina then put it on the floor. Two law enforcement agencies were later in the house and the gun - a Titan .25 cal, serial number B91482 - was collected into evidence. Although Good claimed he never had a gun during his post-arrest statement, which was not under oath, Plaintiff, Morgan, Medina all testified that Good had a gun. Medina's 911 call when Good was in their home also corroborated her testimony.

Significantly, the Ohio Bureau of Criminal Investigation already attempted DNA testing on the Titan firearm and determined that the data collected from it was not suitable for comparison. That testing destroyed the sample collected from the firearm. (See Exhibit A, BCI Laboratory Report, testing on Item 4, 4.1, and 4.2). The Defendants fail to make any showing that additional DNA testing would result in a different outcome, or that additional DNA testing is even possible given the current status of the Titan. They present no expert opinion that the Titan firearm contains DNA evidence suitable for testing. Both the Titan and Good's DNA sample have allegedly been in storage since June 2, 2017 although the chain of custody and storage status is unclear and subject to attack.

Furthermore, the request for a blanket order permitting unspecified and unlimited DNA order is unreasonable and wholly unrelated to the material issue at the center of this case – whether Defendant Gillespie acted reasonably when he used deadly force to shoot Plaintiff. DNA testing methods and software vary and are riddled with controversy. Defendants' ideal

2

outcome of the DNA testing is a negative result for the presence of Good's DNA on the gun. Such a result would be unreliable due to the handling of the gun by multiple people after it was taken from Good and would require Plaintiff to engage additional experts to demystify the DNA results for the jury. Additional DNA testing of this firearm opens this case up to a trial within a trial, on an issue that has no relevance to the questions of liability before the jury. The Court should deny the Defendant's request for an order to test the firearm.

Cellular Phones

Law enforcement personnel confiscated five cellular phones from the home Plaintiff shared with Morgan and Medina. BCI did not find it necessary in their criminal investigation to search any of these phones. Defendants now seek unlimited and unspecified "forensic testing" by an unnamed entity on all five phones. The Defendants do not even know who owned or used these phones. They now seek free range to engage in a fishing expedition into personal cellular phones potentially belonging to Plaintiff and non-parties witnesses alike. The Court should deny the Defendants' motion for such an invasive and unreasonable order.

Individuals have a reasonable expectation of privacy in their cellular phones. *See generally, Riley v. California*, 134 S. Ct. 2473, 2485 (2014). Witnesses do not forfeit their Fourth Amendment protections simply because they were present on the scene of a police shooting. Defendants request this judge grant them the equivalent of a search warrant allowing open access to search five cellular phones. There is no exception to the warrant requirement for cell phone searches by law enforcement officers, and there should be none here, where no legitimate governmental interests are implicated. *Id.* at 2485. (Law enforcement must generally secure a warrant before conducting the search of a cellular phone.)

There is no probable cause to justify the search of any of the five cellular phones in the context of this civil case. Defendants offer no justification whatsoever to search the phones of Plaintiff or Medina. The only meager justification they offer for searching all five phones is that maybe the searched would show some communication between Morgan and Good. Morgan testified that police confiscated his two cellular phones. In his post-arrest statement, Good claimed he does not own a cellular phone. Therefore at least three of the cellular phones Defendants seek to search did not belong to Morgan or Good. Furthermore, Good never claimed that he communicated with Morgan over text message or phone. The Defendants present no argument or evidence – other than mere speculation – that the searches of the phones would reveal some prior communication between Morgan and Good.

Furthermore, Defendants' motion does not state the cellular phones are not password protected. If they are, no forensic testing of the phones will be possible without the passwords or an order forcing the cellular phone provider to grant them backdoor access to the data. Defendants have not requested that the Court grant an order concerning the providers – nor added any cellular phone providers as interested parties to this motion.

This motion raises the most fundamental constitutional questions regarding the invasion of privacy of a non-party witness. Modern cellular phones contain a myriad of personal information and implicate serious privacy concerns. *See Riley*, 134 S. Ct. at 2488-92. They contain personal mail, internet browsing history, financial data, personal communications, photographs, videos, and more. *Id.* Defendants offer to "agree to a protocol to protect any information on the cell phones not relevant to the contacts between Good and Morgan or *other material evidence* the Court could review the data in camera for such purposes." Def. Motion Dkt. 41., p. 3 (emphasis added) This offer does nothing to protect Medina, Morgan, or Plaintiffs'

privacy rights, and actually exposes the Defendants' real desire to engage in a fishing expedition through the entire contents of the phones – and presumably also connected cloud storage – to discover "other material evidence." Cellular phones easily contain multiple gigabytes of data and it is not possible to mine the "material evidence" from the personal, protected information. The United State Supreme Court considered the potential for limited warrantless cellular phone searches for identifying information and resoundingly rejected them because "this approach would again impose few meaningful constraints on officers" and "sweep in a great deal of information." *Id.* at 2492.

Furthermore, any potential data uncovered on these cellular phones would not be relevant to the material issue in this case – whether Defendant Gillespie acted in an objectively reasonable manner when he shot Plaintiff in his home.

Based on the above, Plaintiff respectfully requests this Court to deny the Defendant's request for an order to test and examine the Titan firearm and the five cell phones.

Respectfully submitted,

*/s/ Sarah Gelsomino*
SARAH GELSOMINO (0084340)
TERRY H. GILBERT (0021948)
JACQUELINE GREENE (0092733)
Friedman & Gilbert
55 Public Square, Suite 1055
Cleveland, OH 44113-1901
(216) 241-1430
(216) 621-0427 – Fax
sgelsomino@f-glaw.com
tgilbert@f-glaw.com
jgreene@f-glaw.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


*/s/ Sarah Gelsomino*
SARAH GELSOMINO
*One of the Attorneys for Plaintiff*